## REYNOLDS v. DALLAS COUNTY et al.
### No. 5790.

Court of Civil Appeals of Texas. Amarillo.
June 2, 1947.

Claude C. Westerfelt, of Dallas, for appellant.

Ogden, Mosley & Foshee and Dean Gauldin, Dist. Atty., all of Dallas, for appellees.

STOKES, Justice.

This suit was instituted by the appellant, Preston Pope Reynolds, on his own behalf as a taxpayer of Dallas County, and purporting to act for all others who were similarly situated, against the appellees, Dallas County and Al Templeton, its County Judge. The object of the suit was to procure an injunction against the county, prohibiting the use of voting machines to register and record the ballots cast in local and state elections by the electors. The grounds upon which the injunction was sought were that Article 2997a, Vernon's Revised Civil Statutes permitting the use of such machines, is unconstitutional and void under Article VI, Section 4 and other provisions of the State Constitution, Vernon's Ann. St. Automatic Voting Machine Corporation of Jamestown, New York, intervened in the suit for the purpose of defending the constitutionality of the statute and Dallas County thereupon pleaded a cross-action against the Voting Machine Corporation, alleging that the county had purchased the machines from such corporation and that, if the statute under which it did so were unconstitutional, the county was entitled to recover all sums of money it had paid to the corporation as consideration for certain voting machines theretofore purchased. The case was submitted to the court without the intervention of a jury and resulted in a judgment denying the writ of injunction and all relief prayed for by appellant, to which he duly excepted, gave notice of appeal, and perfected an appeal to the Court of Civil Appeals at Dallas. The case was transferred to this court by an order of the Supreme Court equalizing the dockets of the Courts of Civil Appeals.

Appellant presents the case upon nine assignments of error and an equal number of points or propositions but he correctly states in his brief that the case is controlled by two general contentions to the effect that, first, the method of voting by a voting machine such as that which is provided by Article 2997a is unconstitutional because the machine does not number the ballots cast in an election nor provide any means by which an illegal vote may be detected and redressed. Secondly, that the Article of the statute mentioned is unconstitutional because, (1) it is an attempt by the legislature to delegate to the commissioners courts of the respective counties of the State power to suspend the general and primary election laws in violation of the provisions of Article I, Section 28 of the Constitution, (2) that commissioners courts are given the power to convert the general laws of the State into special laws by adopting the provisions of Article 2997a, in violation of the provisions of Article III, Section 56, Subd. 12 of the Constitution, and (3) because the voting machine law denies to the citizens of the State the equal protection of the law in that, where paper ballots are used a defeated candidate can contest the election upon the grounds of illegal voting therein, and that such a contest is not possible where voting machines are used.

On September 17, 1936, in the manner provided by Article 2997a, Dallas County adopted the provisions of that Article, generally known as the voting machine law, and at the same time, or shortly afterwards, it purchased from the intervenor, Automatic Voting Machine Corporation, one hundred and thirty-five voting machines for which it agreed to pay $135,380 evidenced by time warrants. On subsequent occasions the county purchased other similar machines, issuing time warrants in payment therefor and, when this suit was filed, approximately $166,000 of the purchase price, as evidenced by the warrants, was still outstanding and unpaid. In addition

to an injunction restraining the use of the voting machines, appellant prayed that the county be enjoined from making any further payments on the outstanding warrants issued in payment for the machines already purchased and from purchasing other machines of like character, all based upon his contention that Article 2997a, the authority under which the voting machines were purchased, is unconstitutional and void.

From the record before us we are unable to gain a satisfactory understanding of the nature and mechanism of the voting machines in question but it is fairly clear that, when an elector presents himself as a voter in an election, his name is registered by the authorities, his qualifications as an elector are determined and, if he is found to be a qualified elector, he is provided with a number which indicates the position he should take in the line of voters. When he reaches the machine, he enters, closes a curtain which isolates him completely and encloses him in the machine. The names of the candidates are in some manner revealed to him and he is provided a means by which he is enabled to select the candidates for whom he wishes to vote. When he has done this, he pulls a lever and the machine automatically registers his vote in accordance with the selections of candidates made by him. At the same time a serial number is revealed on the outside of the machine but no number is impressed, printed, or stamped upon a paper ballot, or ballot of any other substance, nor is it otherwise registered or shown that the elector voted for any particular candidate or measure. The evidence shows that the number furnished the elector when his qualifications have been determined does not necessarily correspond with the serial number revealed by the machine when he casts his vote. In fact there seems to be no relation whatever between the two numbers. According to the testimony, it frequently happens that more than one machine is being used and that voters receiving their numbers enter either of the machines, usually selecting the one which appears to be most available and in which they can cast their vote with the least delay. The testimony shows that on some occasions, after receiving their numbers, voters leave the premises and do not vote at all. Since each machine carries its own series of numbers, there could not be any connection between the numbers furnished the electors upon their qualifications being determined and the numbers registered by either of the machines. It follows therefore that it is not possible to determine the candidate for whom any particular elector cast his vote nor whether he voted for or against any candidate or measure involved in the election.

Section 4 of Article VI provides, "In all elections by the people the vote shall be by ballot and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box and the Legislature may provide by law for the registration of all voters in all cities containing a population of ten thousand inhabitants or more."

In the case of Wood v. State ex rel. Lee, 133 Tex. 110, 126 S.W.2d 4, 121 A.L.R. 931, our Supreme Court observed that this section of the Constitution contains four distinct provisions, the first two of which are mandatory and the remaining two are discretionary with the legislature. The first provision requires that in all elections by the people the vote shall be by ballot and the second requires that the tickets shall be numbered. Appellant's contention is that Article 2997a does not comply with either of these provisions and it is therefore unconstitutional. In the Wood case the Supreme Court specifically held that the method used in casting votes by means of voting machines similar to those involved here fully meet the requirements of the constitutional provision in reference to the vote being by ballot. We are in full accord with that holding and are, of course, bound by it. A ballot is not necessarily a piece of paper or other substance upon which a number can be stamped. It originally consisted of a small ball, bean, a grain of corn, a coin, or other small article which could be concealed in the hand so that others might not know how the voter cast his ballot. Norris v. Mayor and City Council, 172 Md. 667, 192 A. 531; State

v. Green, 121 Ohio St. 301, 168 N.E. 131, 66 A.L.R. 849. It implies secrecy in the matter of voting and any act by which an elector, in secrecy, casts his vote for or against candidates or measures constitutes a ballot. The voting machine secures this right to every voter and the first provision of Section 4, Article VI, is therefore fully met.

█ The second provision is that the tickets shall be numbered. According to the record before us no number is stamped or otherwise placed upon any ticket or ballot cast by any elector. The machine registers a number when the voter pulls the lever inside but the number is not transferred to any ticket or ballot nor does the machine provide any method by which the ballot cast by an elector can be identified with his name on the register kept by the election officials or the number given to the elector before he votes. It is true the Constitution contains no specific requirement that this be done but it plainly implies that such arrangements should be made, and the voting should be conducted under such conditions, as to make it possible to detect and punish fraud and preserve the purity of the ballot box. The Constitution enjoins upon the legislature the duty to make such regulations as may be necessary to accomplish that end. In the case of State ex rel. Barry v. Connor, 86 Tex. 133, 23 S.W. 1103, 1105, the identical question was treated at length by the Supreme Court and Mr. Justice Brown, speaking for the court, gave the history of the constitutional provision requiring it. The opinion reveals that by a statute enacted by the legislature March 16, 1848, the election officers were required to write the number and name of each voter and that one of them should, at the time of receiving the ticket or ballot from the voter, write upon it the voter's number corresponding with the clerk's list. In 1870, Laws 12th Leg., § 19, p. 131, another statute was enacted which required one of the election judges to write upon each ticket certain words indicating the State or District office in reference to which the vote was cast and it was made a penal offense for any officer of an election to place any other mark upon it. Two years later, in a general election, the election officers in one county ignored the latter statute, followed the provisions of the law of 1848 and numbered the ballots. These were excluded by Governor Davis from the estimate of the votes in that county because the numbers were placed thereon. The alleged ground for excluding them was that numbering the ballots had the effect of intimidating the voters. The following year the legislature repealed the act of 1870 and re-enacted substantially the law of 1848. When the constitutional convention assembled in 1876 the present Section 4 of Article VI was written into the Constitution. Thus it is evident that the writers of the Constitution and the people who adopted it were conscious of its value and determined to retain it as the established law of the land. In discussing its meaning, the Supreme Court said, "The language is such as to manifest the purpose to declare that the numbering of ballots was not calculated to intimidate voters, but was a means necessary to 'detect and punish fraud and to preserve the purity of the ballot.' * * * We must presume that the laws in force on the subject of numbering ballots, and the prohibition as to counting the ballots not numbered, were in the minds of the members of the convention and the legislature when these provisions were framed, and the laws were not condemned, but approved." Further on in the same opinion the court said, "It is consistent with the constitutional requirement that the ballots be numbered, and is perhaps the only means by which fraud perpetrated by persons voting, who are not qualified electors, could be effectually punished, thus depriving the promoter of the fraud of its fruits. It may be that in some instances the failure to number might occur by reason of a misunderstanding of the law, or from negligence in the officer, and the voter might be deprived of the benefit of his ballot without his fault; but the constitution has declared that it is one of the means to be adopted by the legislature to detect, prevent, and punish fraud." The statute in force at that time complied with the constitutional provision but no such requirement is found in Article 2997a of the present statute nor does the voting machine in question comply with it. It is difficult to conceive of an alternative plan

or arrangement whereby the provision of the constitution requiring regulations necessary to detect and punish fraud and preserve the purity of the ballot box in that respect could be made. It is true the voting machine fleetingly records the votes as cast by the electors and reveals the total number of votes cast for each candidate or measure but that would not seem to comply with the mandate of the constitution. The ballots are not numbered and there is no way or means by which it can be determined for whom or what measure any elector voted. Merely because the machine itself does not number the ballots, however does not render unconstitutional the statute permitting its use. It is conceivable that other methods of numbering the ballots could be utilized. In our opinion there is no merit in appellant's contention, albeit the requirements of the constitution are not fully met when the provisions of the statute and the use of voting machines are fully observed. The duty of making provision for numbering the ballots and making such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box is placed upon the legislature and, if the present Article does not meet the requirement of the constitution, it is properly a matter for the consideration of the legislature and not the courts. The first contention of appellant and his assignments of error relating thereto are therefore without merit and will be overruled.

The gist of appellant's second contention is that, by extending to the commissioners courts of the various counties power to adopt the provisions of the voting machine law, the legislature has attempted to abrogate its authority and to place in the commissioners courts power to suspend a general law and substitute special laws therefor. He asserts that the effect of such delegation of authority is to destroy the constitutional provision that election laws shall be general and uniform which, he contends, is in violation of the provisions of Section 28, Article I, Section 56, Sub. 12 of Article III, and Section 1 of Article II of the State constitution. Article 2997a is a general law and complete within itself. It applies to all counties in the State but becomes operative in a county only upon its adoption by the commissioners court of that county. It is a long and well-settled rule of constitutional law that the legislature cannot delegate to the people or any board, bureau, commissioners court or other administrative or legal body or institution its authority to make laws; but that does not mean the legislature is without authority to confer a power upon a municipal corporation or its governing body authority and power to accept or reject the benefits and provisions of a general law legally enacted by the legislature. Conditions can, and frequently do, arise in which the legislature itself cannot, in a practical and efficient manner, exercise certain types of authority. It would seem the subject matter of the statute in question furnishes a practical demonstration of such a condition. Obviously the voting machines are designed to facilitate voting in those localities and precincts where, on account of the large number of electors eligible to vote, the process of voting becomes congested and makes it difficult for the election to be completed and all electors accommodated within the time allowed for its completion; whereas, in other sections and precincts, no difficulty in that respect is encountered. In the first class of sections and precincts the voting machines are no doubt beneficial and perhaps necessary but they are not needed in the latter class. It would be difficult, if not impossible, for the legislature to ascertain the places where the machines were needed and distinguish those in which they were not needed. In such conditions it is the well-established rule that the legislature is authorized to delegate to local authorities the power and authority to determine whether or not a general statute shall become effective within their respective jurisdictions. Johnson v. Martin, 75 Tex. 50, 12 S.W. 321; Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070; State Highway Dept. v. Gorham, 139 Tex. 361, 162 S.W.2d 934. In Trimmier v. Carlton, supra, Chief Justice Cureton, speaking on the question for the Supreme Court, observed that the exercise of that particular type of authority by the legislature is recognized as an exception to the general language of limitation in the Constitution; that it was merely tanta-

mount to saying that the Constitution itself does not require the impracticable or the impossible.

We have carefully considered all of the assignments of error, contentions and argument presented by appellant and, as is evident from what we have said, we conclude that no reversible error is shown. The judgment of the court below will therefore be affirmed.