OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 1, 2001

The Honorable Carole Keeton Rylander
Comptroller of Public Accounts
P.O. Box 13528
Austin, Texas 78711-3528

Opinion No. JC-0373

Re:  Whether the value of property subject to a tax increment financing agreement under Local Government Code chapter 374 may be deducted from a school district's total taxable value, and related questions  (RQ-0303-JC)

Dear Comptroller Rylander:

You request an opinion concerning the Comptroller's duty to "determine the total taxable value of all property in each school district" pursuant to Government Code section 403.302. *See* TEX. GOV'T CODE ANN. § 403.302(a) (Vernon Supp. 2001). The "total taxable value" of such property is certified to the Commissioner of Education and is used to calculate the state's support for school districts and determine the district's wealth per student under the funding equalization provisions of the Education Code. *See id.* § 403.302(g); *see also* TEX. EDUC. CODE ANN. §§ 41.001, 41.002, 42.302(a); Tex. Att'y Gen. Op. No. JC-0152 (1999) at 8-9 (discussing purpose and history of Government Code section 403.302). The "taxable value" of property in a school district "means the market value of all taxable property" less the dollar amounts of certain exemptions and deductions, as provided by Government Code section 403.302(d). *See* TEX. GOV'T CODE ANN. § 403.302(d) (Vernon Supp. 2001).

You ask whether Government Code section 403.302(d)(8) requires the deduction from the market value of the property value subject to a tax increment financing agreement entered into under the Texas Urban Renewal Law, chapter 374 of the Local Government Code.[1] Government Code section 403.302(d)(8) requires the deduction of such market value. *See id.* § 403.302(d)(8). You also ask about the authority of a municipality to adopt tax increment financing under Local Government Code chapter 374, subchapter D, without holding an election, and in connection with this question, you raise an issue about the constitutionality of these tax increment financing

---

[1]*See* Letter from Billy C. Hamilton, Deputy Comptroller, Office of the Comptroller of Public Accounts, to Honorable John Cornyn, Texas Attorney General (Oct. 27, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

provisions when they were adopted and the possibility that they were subsequently validated.[2] The predecessor of subchapter D was unconstitutional when adopted, and tax increment financing could not be adopted thereunder whether or not an election was held. The tax increment provisions were validated when the statute was reenacted in 1987 after the adoption of the constitutional provision authorizing tax increment financing. *See* TEX. CONST. art. VIII, § 1-g. An election is still necessary for a city to adopt tax increment financing under the Texas Urban Renewal Law. You finally ask whether a school district action in placing ad valorem tax revenues in the tax increment fund is optional and not "required by statute" because the city must hold an election to adopt the tax increment financing provisions.[3] In such case, the school district's action is not optional and is required by statute.

The tax increment financing provisions of Local Government Code chapter 374 have not been the subject of any judicial decisions, and only one opinion of this office has addressed them. *See* Tex. Att'y Gen. Op. No. H-1191 (1978) (whether tax increment bonds may be issued without holding an election). In contrast, the Tax Increment Financing Act found in Tax Code chapter 311 has been the subject of judicial decisions and attorney general opinions. *See City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296 (Tex. 1986) (constitutionality of Act), *Lampson v. City of Beaumont*, 687 S.W.2d 788 (Tex. App.–Beaumont 1985, no writ) (determination of proper year to figure value of tax increment base); *see, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0152 (1999); JC-0141 (1999); DM-390 (1996); JM-758 (1987). We begin by summarizing the provisions that you inquire about.

Chapter 374 of the Local Government Code grants municipalities various powers directed at eliminating slum and blighted areas, and subchapter D of that law authorizes municipalities to fund urban renewal projects through tax increment financing. *See* TEX. LOC. GOV'T CODE ANN. §§ 374.001, .002, .035 (Vernon 1999). The provisions authorizing tax increment financing were adopted in 1977[4] as amendments to former article 1269*l*-3 of the Revised Civil Statutes, which is now codified as Local Government Code chapter 374.[5] The analysis of a 1981 bill proposing an amendment to the tax increment provisions of former article 1269*l*-3 described their operation as follows:

> A city designates an urban renewal area and issues bonds for public improvements. The bonds are not an obligation of the city, but are backed solely by future tax increments. Tax increments are any taxes that result from the increased value of the property in the project area. City, county, state, school district, and special district tax increments go into a [tax increment] fund to be used to repay the bonds. The

---

[2]*See* Request Letter, *supra* note 1.

[3]*See* Request Letter, *supra* note 1.

[4]*See* Act of May 28, 1977, 65th Leg., R.S., ch. 850, §§ 1-3, 1977 Tex. Gen. Laws 2126.

[5]*See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49(1), 1987 Tex. Gen. Laws 707, 1175, 1306.

taxes collected by each taxing entity on the original market value of the district still go [to] the taxing entity. Only taxes on newly added value go to repay bonds. Once the bonds are repaid, the full value of the area goes onto each jurisdiction's tax rolls, to be taxed normally.

HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 1495, 67th Leg., R.S. (1981).[6]

To engage in urban renewal projects as authorized by Local Government Code chapter 374, a municipality must designate an "urban renewal area," defined as "a slum area, blighted area, or a combination" of such areas that is appropriate for an urban renewal project, and prepare an urban renewal plan for the area. TEX. LOC. GOV'T CODE ANN. §§ 374.003(26), .014 (Vernon 1999). The municipality "may not use the tax increment method of financing" prescribed under subchapter D of chapter 374 "unless a majority of the qualified voters of the municipality voting on the question approve that method of financing in an election held by the municipality," but "[t]his referendum is not required if the constitutional amendment on tax increment financing is approved by the voters." Id. § 374.031(a), (d). The legislature that enacted the predecessor to subchapter D of Local Government Code chapter 374 also proposed an amendment to the Texas Constitution that would grant the legislature power to authorize cities to issue tax increment bonds for the redevelopment of blighted areas,[7] but "the constitutional amendment on tax increment financing" was not approved by the voters.[8]

Upon approval of tax increment financing by the voters of the municipality, the governing body must establish a "tax increment fund," which provides security for bonds issued to pay urban renewal costs in the project area. See id. §§ 374.032, .035 (tax increment bonds). After tax increment financing is implemented in an urban renewal project area, governmental entities that tax real property in the area must deposit in the tax increment fund any increases in ad valorem tax revenues, or "tax increments," from real property within the area. Id. § 374.034. The increased market value reflected by the tax increments is defined as the "captured market value." See id. § 374.003(6). The taxing entities retain tax revenues generated by the original market value of the real property in the project area at the time tax increment financing was implemented.

We turn to your first question, whether section 403.302(d)(8) of the Government Code "requires the deduction of the captured appraised [or market] value of property the school district is required to contribute to the tax increment fund."[9] We assume for purposes of this question that the tax increment fund was validly created, and we will consider constitutional issues relevant to the

---

[6]The bill was withdrawn by the author. See H.J. OF TEX., 67th Leg., R.S. 2760; see also HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981).

[7]See Tex. S.J. Res. 44, 65th Leg., R.S., 1977 Tex. Gen. Laws 3365.

[8]See Table 2: Votes on Proposed Amendments to the Texas Constitution, 1875-1978, 1979 Tex. Gen. Laws 3251, 3267.

[9]Request Letter, supra note 1, at 3.

tax increment financing provisions of the Texas Urban Renewal Law in addressing your remaining questions. *See generally* Tex. Att'y Gen. Op. No. MW-337 (1981); HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981).

Government Code chapter 403, subchapter M was adopted to help "ensure equity among taxpayers in the burden of school district taxes and among school districts in the payment of state financial aid to schools." TEX. GOV'T CODE ANN. § 403.301 (Vernon 1998). As a means of implementing this policy, section 403.302 requires the Comptroller to conduct annual studies to determine the total value of taxable property within Texas school districts. *See id.* § 403.302 (Vernon Supp. 2001); *see also El Paso Indep. Sch. Dist. v. Sharp*, 923 S.W.2d 844, 845 (Tex. App.–Austin 1996, writ denied) (purpose of section 403.302); Tex. Att'y Gen. Op. No. JC-0002 (1999) at 2 (purpose of section 403.302). The Commissioner of Education uses that figure to calculate the amount of local tax revenue the school district will be able to raise at its current tax rate and to determine the school district's "wealth per student" under the Education Code provisions directed at determining state support for school districts and equalizing wealth among them. *See* TEX. EDUC. CODE ANN. §§ 41.001, .002 (Vernon Supp. 2001); *id.* §§ 42.252, .302(a); *Calhoun County Indep. Sch. Dist. v. Meno*, 902 S.W.2d 748 (Tex. App.–Austin 1995, writ denied) (use of Comptroller's determination under Government Code section 403.302 to determine school district funding). *See also Sharp*, 923 S.W.2d at 845 (taxable value of property in a school district directly determines amount of state funding received by the district).

Section 403.302(d) provides that the "taxable value" of property within a school district is determined by deducting specified amounts from the market value of such property, including:

> (8) a portion of the market value of property not otherwise fully taxable by the district at market value because of action required by statute or the constitution of this state that, if the tax rate adopted by the district is applied to it, produces an amount equal to the difference between the tax that the district would have imposed on the property if the property were fully taxable at market value and the tax that the district is actually authorized to impose on the property, if this subsection does not otherwise require that portion to be deducted.

TEX. GOV'T CODE ANN. § 403.302(d)(8) (Vernon Supp. 2001). We are asked to decide whether real property subject to tax increment financing under Local Government Code, chapter 374, is "property not otherwise fully taxable by the district at market value because of action required by statute or the constitution of this state." *See id.*[10]

You suggest that the property is in fact "fully taxable by the district at market value," *see id.*, because the district imposes taxes on the full value of the property, even though the law does not

---

[10]*See* Request Letter, *supra* note 1.

permit it to retain all of the taxes it collects.[11] You also state that "an argument has been made that because the school district is not permitted by law to retain the taxes paid on the captured appraised value of this property, the property is not in fact fully taxable by the district."[12]

In our opinion, the property is not "fully taxable by the district at market value because of action required by statute," *see id.*, specifically, Local Government Code section 374.034, which requires a school district that taxes real property in the project area to deposit in the tax increment fund any increases in ad valorem tax revenues from real property within the area. *See* TEX. LOC. GOV'T CODE ANN. § 374.034 (Vernon 1999). The phrase "fully taxable by the district" in Government Code section 403.302(d)(8) must be read in context and construed according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). The property value studies required by subchapter M of chapter 403 of the Government Code are used to calculate the amount of "local" tax revenue the school district will be able to raise, for the purpose of making other determinations about school district funding. *See generally id.* §§ 403.301-.304 (Vernon 1998 & Supp. 2001) (subchapter M); TEX. EDUC. CODE ANN. §§ 42.252, .302 (Vernon Supp. 2001). Reading section 403.302(d)(8) in light of this purpose, we conclude that "taxable by the district" means property that generates tax revenues for the district, and not property that the district taxes as an agent for another entity. *See* TEX. GOV'T CODE ANN. § 403.302(d)(8) (Vernon Supp. 2001). Accordingly, the "captured appraised value" must be subtracted from the market value of property taxable by a school district subject to tax increment financing under chapter 374. *See id.* § 403.302(d). *See also* TEX. LOC. GOV'T CODE ANN. § 374.033(e) (Vernon 1999) (taxing entity may not consider captured market value for any purpose except to determine the amount to be paid into the tax increment fund).

You next inquire about the validity of the provisions of Local Government Code chapter 374 authorizing a municipality to use tax increment financing without holding an election.[13] You ask whether these provisions were revived by the adoption of article VIII, section 1-g of the Texas Constitution in 1981[14] or the 1987[15] codification of the Urban Renewal Law as chapter 374 of the Local Government Code.[16]

---

[11]Request Letter, *supra* note 1, at 3.

[12]Request Letter, *supra* note 1, at 3.

[13]*See* Request Letter, *supra* note 1, at 3.

[14]*See* Tex. S.J. Res. 8, 67th Leg., 1st C.S., 1981 Tex. Gen. Laws 295 (proposing adoption of article VIII, § 1-g); *see also* Table 2: Votes on Proposed Amendments to the Texas Constitution, 1875-1982, 1983 Tex. Gen. Laws 6739, 6756 (adoption of article VIII, § 1-g).

[15]*See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1, 49, 1987 Tex. Gen. Laws 707, 1176, 1306 (nonsubstantive revision of statutes relating to local government, adopting chapter 374 of the Local Government Code and repealing article 1269*l*-3, Revised Civil Statutes).

[16]*See* Request Letter, *supra* note 1.

In our opinion, the provisions of former article 1269*l*-3 of the Revised Civil Statutes authorizing tax increment financing were unconstitutional when adopted. *See* Tex. Att'y Gen. Op. No. MW-337 (1981) (finding Tax Increment Financing Act of 1979 unconstitutional). Although the legislature that added the tax increment provisions to article 1269*l*-3 also proposed a constitutional amendment authorizing tax increment financing, the voters did not adopt the proposed amendment.[17] A tax increment financing plan adopted under unconstitutional provisions of article 1269*l*-3 would not be valid, with or without voter approval.

Our conclusion is based on Attorney General Opinion MW-337 (1981), which addressed the constitutionality of the Tax Increment Financing Act of 1979[18] ("the 1979 Act") at the request of a legislative committee. This office determined that the 1979 Act was facially unconstitutional under article VIII, section 1(a) of the Texas Constitution, which provides that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). Ad valorem taxes were to be collected for the general support of the municipality, while charges laid to benefit particular property within the municipality were not "taxes," but "special assessments." *See* Tex. Att'y Gen. Op. No. MW-337 (1981) at 3-5 (citing *City of Wichita Falls v. Williams*, 26 S.W.2d 910 (Tex. 1930), *Taylor v. Boyd*, 63 Tex. 533 (1885)). The 1979 Act attempted to limit the use of certain ad valorem tax revenues to improving property within the tax increment district instead of allocating them to the general support of the city. *See* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5. "[T]he earmarking of tax-increment revenue to pay for improvements within the tax increment zone meant that property within the zone was not contributing its fair share to the city's general fund." HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981). Thus, the Tax Increment Financing Act of 1979 violated the "equal and uniform" provision of article VIII, section 1(a) of the Texas Constitution.

Attorney General Opinion MW-337 did not address the tax increment financing provisions of former article 1269*l*-3 of the Revised Civil Statutes, but they would also have been unconstitutional under its reasoning. *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981) (Attorney General Opinion MW-337 is assumed to apply to the tax-increment provision of the Urban Renewal Law); Tex. Att'y Gen. Op. No. H-1191 (1978) at 3 (reserving comment on constitutional issues that might be raised by tax increment financing provisions of Urban Renewal Law). Moreover, when Attorney General Opinion MW-337 was issued, former article 1269*l*-3 required the diversion of school district tax revenues to non-educational purposes in violation of article VII, section 3 of the Texas Constitution. *See* TEX. CONST. art. VII, § 3 (legislature may authorize school district to collect ad valorem taxes for maintenance of public schools and the construction and equipment of school buildings); HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.B. 16, 67th Leg., 1st C.S. (1981) at 4-5; *cf. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296 (article VIII, section 1-g of Texas Constitution permits school district ad valorem tax revenues to be used for noneducational purposes pursuant to tax increment financing

---

[17]*See* Tex. S.J. Res. 44, 65th Leg., R.S., 1977 Tex. Gen. Laws 3365; *see also* Table 2: Votes on Proposed Amendments to the Texas Constitution, 1875-1978, 1979 Tex. Gen. Laws 3251, 3267.

[18]*See* Act of May 28, 1979, 66th Leg., R.S., ch. 695, 1979 Tex. Gen. Laws 1661.

provisions). We conclude that the provisions of former article 1269*l*-3 of the Revised Civil Statutes authorizing tax increment financing were unconstitutional when adopted.

After Attorney General Opinion MW-337 ruled that the tax increment law was unconstitutional, the legislature proposed adding article VIII, section 1-g to the constitution to authorize tax increment financing.[19] This provision was adopted by the voters.[20] We will consider whether the adoption of article VIII, section 1-g, validated the tax increment provisions of former article 1269*l*-3 of the Revised Civil Statutes.

A statute unconstitutional when adopted may be revived by the adoption of a constitutional amendment that cures the constitutional defect. *See Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991) (holding that 1980 amendment to article XVI, section 15 of the Texas Constitution impliedly validated statute on premarital agreements regarding community property). An invalid statute and actions taken in reliance on it will be validated by the adoption of a constitutional amendment that specifically refers to the statute. *See id.* at 747; *see also Hutchinson v. Patching*, 129 S.W. 603 (Tex. 1910). An invalid statute may also be impliedly validated by the adoption of a constitutional amendment to cure it, if there is no impairment of the obligation of a contract or of vested rights. *See Beck*, 814 S.W.2d at 747.[21] An invalid statute will not be impliedly validated by a constitutional amendment unless it was intended to apply retroactively. *See id.* at 748.

Article VIII, section 1-g of the Texas Constitution did not specifically refer to any statute and, in consequence, its adoption did not expressly validate any legislation. *See id.* at 747; *Hutchinson*, 129 S.W. 603. The legislature proposed this constitutional amendment with the understanding that the Tax Increment Financing Act of 1979 was unconstitutional,[22] but it did not attempt to validate that law. Instead, the session of the legislature that proposed amending the constitution repealed the Tax Increment Financing Act of 1979 and adopted the Tax Increment Financing Act of 1981 ("the 1981 Act").[23] Moreover, the effectiveness of the 1981 enactment was expressly contingent on the addition of article VIII, section 1-g, to the constitution.[24] Despite the issuance of Attorney General Opinion MW-337, two cities had established tax increment districts

---

[19]*See* Tex. S.J. Res. 8, 67th Leg., 1st C.S., 1981 Tex. Gen. Laws 295 (proposing adoption of article VIII, § 1-g).

[20]*See* Table 2: Votes on Proposed Amendments to the Texas Constitution, 1875-1982, 1983 Tex. Gen. Laws 6739, 6756 (adoption of article VIII, § 1-g).

[21]*See also* Annotation, *Removal or Suspension of Constitutional Limitation As Affecting Statute Previously Enacted*, 171 A.L.R. 1070, 1072-73 (1947).

[22]*See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981).

[23]*See* Act of August 10, 1981, 67th Leg., 1st C.S., ch. 4, § 1, secs. 1-14, 1981 Tex. Gen. Laws 45.

[24]*See id.* ch. 4, § 4, 1981 Tex. Gen. Laws 45, 52.

under the 1979 Act.[25] The 1981 Act included a validation provision for such cities, stating that "[a] tax incremental district approved by a city or town pursuant to [the 1979 Tax Increment Financing Act] may be designated by ordinance adopted by the governing body of the city or town as a reinvestment zone *under this Act.*"[26] Thus, the legislature wished existing tax increment districts to operate under the 1981 Act, rather than 1979 Act held unconstitutional by Attorney General Opinion MW-337.

The legislature's treatment of the 1979 Act and actions taken thereunder displayed an intent for the constitutional amendment to operate prospectively only, and not to validate tax increment provisions adopted without constitutional authority. Given this strong legislative preference for prospective operation of Texas Constitution article VIII, section 1-g with respect to the Tax Increment Financing Act of 1981, and the absence of any evidence that it wished to validate the tax increment provisions of the Urban Renewal Law, we conclude that the latter provisions were not validated by the adoption of the constitutional amendment.

The tax increment financing provisions of the Urban Renewal Law were validated when they were repealed and reenacted as chapter 374 of the Local Government Code in the 1987 nonsubstantive revision of statutes relating to local government.[27] When a code is enacted, it becomes the binding law of the state. *See Long v. State*, 3 S.W.2d 448, 449 (Tex. Crim. App. 1928). If a statute is unconstitutional when adopted, it will become effective by its inclusion in a code adopted after the constitution has been amended to authorize legislation of its type. *See Carlton Indep. Sch. Dist. v. Jordon*, 25 S.W.2d 610, 611 (Tex. Comm. App. 1930, judgm't adopted); *see also Skaggs v. Grisham-Hunter Corp.*, 53 S.W.2d 687, 688 (Tex. Civ. App.–El Paso 1932, writ ref'd). The Urban Renewal Law was repealed and reenacted in 1987, after the constitutional amendment authorizing tax increment financing had been adopted. *See* TEX. CONST. art. VIII, § 1-g.[28] The tax increment financing provisions of the Urban Renewal Law were constitutional when they became effective as subchapter D of Local Government Code, chapter 374.[29]

We point out, however, that a municipality may not use the tax increment method of financing under subchapter D of chapter 374 "unless a majority of the qualified voters of the municipality voting on the question approve that method of financing in an election held by the municipality." TEX. LOC. GOV'T CODE ANN. § 374.031(a) (Vernon 1999). Subsection 374.031(d) provides that "[t]his referendum is not required if the constitutional amendment on tax increment financing is approved by the voters," *id.* § 374.031(d), but the voters did not approve the

---

[25]*See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex. S.J. Res. 8, 67th Leg., 1st C.S. (1981).

[26]Act of August 10, 1981, 67th Leg., 1st C.S., ch. 4, § 2(b), 1981 Tex. Gen. Laws 45, 52 (emphasis added). *See also id.* § 2(a), 1981 Tex. Gen. Laws 45, 52 (reinvestment zone designated pursuant to this Act may not incur tax increments before January 1, 1982).

[27]*See* Act of May 1, 1987, 70th Leg., ch. 149, §§ 1, 49(1), 1987 Tex. Gen. Laws 707, 1175, 1307.

[28]*See supra* notes 19, 20 (proposal and adoption of article VIII, § 1-g).

[29]*See* Act of May 1, 1987, 70th Leg., ch. 149, § 52, 1987 Tex. Gen. Laws 707, 1308 (effective Sept. 1, 1987).

constitutional amendment referred to. This provision refers to Senate Joint Resolution 44 of the Sixty-fifth Legislature, *see* Tex. Att'y Gen. Op. No. H-1191 (1978) at 2, which was defeated by the voters.[30] The provision adopted in 1981 as article VIII, section 1-g of the Texas Constitution differs so much from the amendment proposed by Senate Joint Resolution 44 that it cannot be regarded as "the amendment" referred in subsection 374.031(d) and its predecessor. Senate Joint Resolution 44 provided that:

> the legislature may, subject to the limitations provided herein, authorize cities and towns to issue tax increment bonds, the proceeds of which shall be used to finance the redevelopment of blighted areas, and the payment of which shall be provided from tax increments, as such term is defined by the legislature.

Tex. S.J. Res. 44, 65th Leg., R.S., § 1, sec. 1-g(a), 1977 Tex. Gen. Laws 3365. Subsection (b) barred the use of tax revenues, utility revenues, and revenues from municipal or state services to pay any bonds issued pursuant to the authorization in the proposed amendment. *See id.* § 1, sec. 1-g(b).

Article VIII, section 1-g, as adopted in 1981, provides as follows:

> (a) The legislature by general law may authorize cities, towns, and other taxing units to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone for the purpose of encouraging development or redevelopment and improvement of the property.

> (b) The legislature by general law may authorize an incorporated city or town to issue bonds or notes to finance the development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town and to pledge for repayment of those bonds or notes increases in ad valorem tax revenues imposed on property in the area by the city or town and other political subdivisions.

TEX. CONST. art. VIII, § 1-g.

Senate Joint Resolution 44 would have authorized legislation granting cities and towns authority to issue tax increment bonds subject to stated limitations. The bond proceeds could be used "to finance the redevelopment of blighted areas." Tex. S.J. Res. 44, 65th Leg., R.S., § 3, 1977 Tex. Gen. Laws 3365. Article VIII, section 1-g, authorizes a broader range of legislation, including legislation authorizing taxing units "to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone" to encourage development or redevelopment and

---

[30]*See* Table 2: Votes on Proposed Amendments to the Texas Constitution, 1875-1978, 1979 Tex. Gen. Laws 3251, 3267.

improvement of the property. TEX. CONST. art. VIII, § 1-g(a). It also authorizes legislation allowing cities and towns to issue bonds or notes repayable from tax increments to finance the "development or redevelopment of an unproductive, underdeveloped, or blighted area within the city or town." *Id.* § 1-g(b). Accordingly, article VIII, section 1-g is not "the amendment" that section 374.031 refers to, and a municipality may not use the tax increment method of financing under chapter 374 absent an election. *See* TEX. LOC. GOV'T CODE ANN. § 374.031(a) (Vernon 1999).

You finally ask whether the referendum requirement of Local Government Code section 374.031(a) makes the tax increment financing method optional for the school district, so that the school's participation is not "required by statute" within section 403.302(d)(8) of the Government Code, and the market value of property subject to a tax increment financing agreement is not deductible under that statute.[31]

In our opinion, the deposit of ad valorem tax revenues in the tax increment fund is an "action required by statute," specifically, section 374.034 of the Local Government Code. *See* TEX. GOV'T CODE ANN. § 403.302(d)(8) (Vernon Supp. 2001); TEX. LOC. GOV'T CODE ANN. § 374.034 (Vernon 1999) (deposit of tax increments). The legislature enacted Subchapter D of Local Government Code chapter 374 and authorized municipalities to accept or reject its benefits. *See generally Reynolds v. Dallas County*, 203 S.W.2d 320 (Tex. Civ. App.–Amarillo 1947), *certified question answered*, 207 S.W.2d 362 (Tex. 1948) (legislature may delegate to local authorities power to determine whether a general statute shall become effective within their respective jurisdictions). While the governing body of a city or town may not adopt tax increment financing absent the voters' approval, it is the statute adopted by the legislature under constitutional authorization, and not any voluntary act of the school district, that requires the school district to place tax revenues in the tax increment fund. Although the Education Code vests authority to manage the school district in the board of trustees, *see* TEX. EDUC. CODE ANN. § 11.051(a) (Vernon 1996), the school board has no opportunity to consent or withhold consent for the school district's participation in the tax increment financing scheme under subchapter D. *See El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296 (article VIII, section 1-g of the Texas Constitution makes the school board's consent unnecessary to the school district's participation in a tax increment financing plan adopted by a city under 1981 Act).[32] We conclude that the school district's deposit of ad valorem tax revenues in the tax increment fund is an "action required by statute," under Government Code section 403.302(d)(8) even though the voters of the municipality approved adoption of tax increment financing under Local Government Code chapter 374, subchapter D. Accordingly, the Comptroller must deduct from the market value of property taxable by the school district the value subject to a tax increment financing agreement authorized

---

[31]*See* Request Letter, *supra* note 1, at 3.

[32]The Tax Increment Financing Act was subsequently amended to provide that a taxing unit need not pay into the tax increment fund any of its tax increment produced from property located in a reinvestment zone unless it enters into an agreement with the governing body of the municipality that created the zone. *See* TEX. TAX CODE ANN. § 311.013(f) (Vernon Supp. 2001), *adopted by* Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 25, sec. 311.013(g), 1989 Tex. Gen. Laws 4683, 4691, *relettered by* Act of May 29, 1999, 76th Leg., R.S., ch. 983, § 7, sec. 311.013(f), 1999 Tex. Gen. Laws 3763, 3766.

by the Urban Renewal Law, even though that statute requires the voters of the city to approve the adoption of tax increment financing.

### S U M M A R Y

Section 403.302 of the Government Code requires the Comptroller to conduct annual studies to determine the total value of taxable property within Texas school districts. Subsection 403.302(d)(8) of the Government Code requires the Comptroller to deduct from the market value of property taxable by a school district any property value that is subject to a tax increment financing agreement entered into under Local Government Code, chapter 374, subchapter D. The deduction is not optional, but is required by statute.

The predecessor of Local Government Code chapter 374, subchapter D was unconstitutional when adopted. It was not impliedly validated by the 1981 adoption of article VIII, section 1-g of the Texas Constitution authorizing tax increment financing, but it was validated in 1987 when the predecessor statute was reenacted in the codification of laws relating to local government. A municipality may not adopt tax increment financing under Local Government Code, chapter 374, subchapter D unless it holds an election as required by section 374.031(a) of that statute.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee